# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TRINA MILLER,                          :

    Plaintiff,                    :
                               Case No. 3:07cv393

        vs.                        :
                               JUDGE WALTER HERBERT RICE

FRANCES LINK, *et al.*,                :

    Defendants.                   :

---

**DECISION AND ENTRY OVERRULING, IN PART, AND SUSTAINING, IN PART, DEFENDANT LINK'S MOTION FOR SUMMARY JUDGMENT (DOC. #39); SUSTAINING DEFENDANT GREENE COUNTY'S MOTION FOR SUMMARY JUDGMENT (DOC. #40); AND SUSTAINING DEFENDANT GREENE COUNTY'S MOTION TO STRIKE (DOC. #58); CONFERENCE CALL SET**

---

Defendant Francis[1] Link is a lieutenant employed at the Greene County Jail,

by Defendant Greene County, Ohio[2] ("Greene County" or "County"). Plaintiff Trina

Miller initiated this litigation claiming that Greene County and Link violated her

rights under the United States Constitution, while she was an inmate at the Greene

---

[1]Defendant Link's first name is incorrectly listed as "Frances" in the Complaint. Doc. #35 (Am. Compl.) at 1; Doc. #39 (Link's Sum. J. Mot.) at 1.

[2]The Plaintiff originally brought her claims against Link and the "Greene County, Ohio Sheriff's Office." Doc. #2 (Compl.). The Court sustained a Motion to Dismiss the claims against Defendant Greene County, Ohio Sheriff's Office (Doc. #10), finding that it was not an entity capable of being sued. Doc. #21 (adopting Magistrate Judge's Report and Recommendations (Doc. #20)). The Court then sustained the Plaintiff's Motion to amend her Complaint (Doc. #32), to include Defendant Greene County, Ohio. Doc. #35 (Am. Compl.); Doc. #41 (Order).

County Jail. Doc. #35 (Am. Compl.). Specifically, Miller claims that Link initiated various incidents of sexual contact with her, which violated her right to be free from cruel and unusual punishment, under the Eighth Amendment, as well as her right to "Due Process under the Fifth and Fourteenth Amendments of the Constitution." Id. ¶¶ 17, 26. In her memoranda in opposition to the Defendants' Motions for Summary Judgment, Miller clarifies that she is bringing a procedural, rather than a substantive, due process claim. Doc. #48 at 14; Doc. #49 at 14.

Both Defendants move for summary judgment, asserting that the Plaintiff has not established a genuine issue of material fact, as to her claims. Doc. #39 (Link's Sum. J. Mot.); Doc. #40 (Greene County's Sum. J. Mot.). Link also maintains that he is entitled to qualified immunity. Doc. #39. In conjunction with its Motion for Summary Judgment, Greene County has moved to strike certain of the Plaintiff's exhibits to her memorandum in opposition to its Motion for Summary Judgment. Doc. #58.

The Court will first address Greene County's Motion to Strike and then set forth a summary of this case's pertinent facts. The Court will then turn to a review of the summary judgment standard by which it must adhere, followed by an analysis of Link's and Greene County's Motions for Summary Judgment.


I.    Motion to Strike

Greene County moves to strike (Doc. #58) the following exhibits, which are

2

attached to the Plaintiff's memorandum in opposition (Doc. #49):

- <u>Exhibit J</u> - summary of unsworn interview with inmate Crystal Patterson

- <u>Exhibit K</u> - summary of unsworn interview with inmate Rebecca Woolum

- <u>Exhibit L</u> - summary of unsworn interview with inmate Kristen Cervay

- <u>Exhibit R</u> - unsworn witness statement of inmate Carol McElrath

- <u>Exhibit S</u> - unsworn witness statement of inmate Jessica Poling

- <u>Exhibit T</u> - photocopy of envelope and letter addressed to Link from former inmate, April Stanaford[3]

<u>Id.</u> at 2. The basis of the County's objection is that the subject Exhibits are inadmissible hearsay.

According to the Federal Rules of Evidence, hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). As a general rule, "[h]earsay is not admissible except as provided by [the Federal Rules of Evidence] or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress." Fed. R. Evid. 802.

The challenged interview summaries and witness statements are

_____

[3]The Defendant actually includes "Exhibit U" in its Motion to Strike, which it describes as being a "letter addressed to Link from former inmate, April Stanaford." Doc. #58 at 2. However, Exhibit U is an unsworn witness statement of Kelly Perrin, and the letter from Stanaford to Link is part of Exhibit T. Doc. #49, Exs. T, U.

unquestionably hearsay.  The Plaintiff asserts, however, that the documents fall

under the business records exception to the hearsay rule, as noted in Rule 803(6),

given that they were obtained as a result of an official investigation undertaken by

the Defendants. Doc. #59.  The business records exception provides as follows:

> A memorandum, report, record, or data compilation, in any form, of
> acts, events, conditions, opinions, or diagnoses, made at or near the
> time by, or from information transmitted by, <u>a person with knowledge,
> if kept in the course of a regularly conducted business activity</u>, and if
> it was the regular practice of that business activity to make the
> memorandum, report, record or data compilation, all as shown by the
> testimony of the custodian or other qualified witness, or by
> certification that complies with Rule 902(11), Rule 902(12), or a
> statute permitting certification, unless the source of information or the
> method or circumstances of preparation indicate lack of
> trustworthiness.  The term "business" as used in this paragraph
> includes business, institution, association, profession, occupation, and
> calling of every kind, whether or not conducted for profit.

Fed. R. Evid. 803(6) (emphasis added).  The advisory committee notes to this

provision explain why the present documents do not fall within this exception to

the hearsay rule.  The notes stress that when the suppliers of information (the

inmates, in this case) are not the persons acting in the regular course of business

(the custodians of the business records) "an essential link is broken" and "the

assurance of accuracy does not extend to the information itself." Fed. R. Evid.

803(6) advisory committee's notes.  "An illustration is the police report

incorporating information obtained from a bystander:  the officer qualifies as acting

in the regular course but the informant does not." <u>Id.</u>  Thus, the inmates' interview

summaries and witness statements, in the present case, are hearsay not covered

by an exception and, therefore, inadmissible.

As to the letter and the envelope, filed as Exhibit T, the Plaintiff contends that this evidence is not being offered for the truth of the matters asserted therein, but to demonstrate a lack of mistake and motive. Doc. #59 at 2. A review of the Plaintiff's memorandum in opposition, however, indicates that she makes no assertions regarding lack of mistake or motive, with regard to the evidence in question. See Doc. #49 at 5. Therefore, the letter and envelope are also inadmissible hearsay.

Because the interview summaries, witness statements, letter and envelope are hearsay statements, not subject to any exceptions, the Defendant's Motion to Strike Exhibits J, K, L, R, S and T (Doc. #58) is SUSTAINED.

II.    Facts[4]

In the fall of 2006, Miller was an inmate at the Greene County Jail. Doc. #38 (Miller Dep.) at 20-21. Lieutenant Link, an employee at the jail, selected attractive, female inmates, including Miller, to perform certain housekeeping tasks

---

[4]Since this case comes before the Court on the Defendants' Motions for Summary Judgment, the Court sets forth the facts and circumstances giving rise to such Motions in the manner most favorable to the Plaintiff, as the party against whom the Motions are directed. Servo Kinetics, Inc. v. Tokyo Precision Instruments, 475 F.3d 783, 790 (6th Cir. 2007).

at the jail. Doc. #48, Exhibit E (Reisinger Stmt.).[5]  Previously, female inmates had

not been asked to do these types of tasks and some employees were

uncomfortable with this practice. Doc. #49, Ex. C (Harppence Interview Summ.);

Doc. #49, Ex. D (Wooten Interview Summ.); Doc. #49, Ex. E (Reisinger Interview

Summ.).  It was a privilege, of sorts, for an inmate to be selected to perform these

sorts of tasks. Doc. #38 (Miller Dep.) at 42.

At some point in time, Link wrote Miller a letter wherein he told her about

his family problems, that he thought she was pretty and that he wanted to get to

know her. Id. at 26.  Miller wrote a return letter to Link saying she was sorry to

hear about his family situation, that she thought he was attractive and that she did

not know what else to say. Id. at 27.  After writing the note, Miller stuck it in her

bra. Id. at 84.  When Link asked her if she had written back to him she said yes.

Id. at 84-85.  He then questioned her as to where she had placed the note. Id.

After she indicated that it was in her bra, he reached inside her shirt and grabbed

the note. Id.

---

[5]In its reply memorandum, Greene County asserts that a number of the
Plaintiff's exhibits (Exhibits B-L and Q-U) are inadmissible hearsay. Doc. #51 at 4-
6.  However, the County did not incorporate certain of the challenged exhibits
(Exhibits B-I, Q and U) in its subsequently filed Motion to Strike (Doc. #58).  The
exhibits that were challenged in the reply memorandum, but not made subject to
the Motion to Strike, are compromised of summaries of unsworn interviews and
witness statements by Greene County employees.  Given that these documents
were recorded by County employees and provided to the Plaintiff by the County,
the Court finds them sufficiently trustworthy, within the parameters of Federal Rule
of Evidence 801(d)(2) (admissions by party-opponents), to be considered when
ruling on the matters presently before it.

After this exchange, Link began regularly allowing Miller out of her cell to clean and buff the floors, a job no other inmate had previously been allowed to do. Id. at 28-30. It was during these cleaning sessions, in the basement of the jail (which was, at least in part, monitored by security cameras), that all of the following allegations of misconduct between Link and Miller occurred. Id.; Doc. #49, Ex. F (Ortiz Interview Summ.).

Initially, Link would simply make casual conversation with Miller, which included complimenting her on her looks. Doc. #38 (Miller Dep.) at 28-30. After a couple of weeks of this sort of interaction, on October 13, 2006, Link kissed Miller and she kissed him back, although she was "thrown off guard a little bit because of who he [was] and who [she] was." Id. at 32-33. The kiss lasted a couple of minutes. Id. at 33. Two weeks after the kissing incident, on November 1, 2006, Link gave Miller a hug, which she returned, and then he put his arm around her and touched her breast, first on the outside of her shirt and then inside her shirt, at which time Miller moved away. Id. at 36-40. The breast touching incident lasted about one minute. Id. at 40.

Approximately one week later, Link asked Miller to lift up her shirt. Id. at 42-43, 47-48. After asking him if he was serious, she lifted up her shirt and he took a picture of her breasts with his cell phone. Id. at 47-48. After taking the picture, Link kissed Miller on the cheek. Id. at 49. When asked how she reacted to all of this, Miller responded "I just - - I didn't." Id.

On approximately November 15, 2006, Link again called Miller to the basement of the jail to buff the floors. Id. at 60. When Miller was in the closet getting the buffer, Link approached her from the rear, put his arms around her and stuck his hand inside her underwear and penetrated her. Id. at 60-61, 65. The encounter lasted approximately one minute, after which Miller moved away. Id. at 62. Link then asked her what was wrong and she told him she "wasn't comfortable doing all that." Id. at 62-63. Miller then left the area. Id. at 63.

After the last incident, Link asked Miller to write him another note. Id. at 65. She responded by writing and telling him she wanted to "end things" with him, because she was not comfortable doing what they were doing. Id. at 65-66. After Miller wrote this letter, there was no further physical contact, although there was one verbal exchange where Link complimented Miller on her looks. Id. at 69-71.

Miller first reported these incidents to jail authorities on November 24, 2006. Id. at 66-69, 87. The County put Link on administrative leave the following day and moved Miller to another jail two days later. Id. at 80, 87.

When questioned at her deposition, Miller stated that none of the sexual encounters caused her any physical pain. Id. at 71. When asked if she consented to the conduct, Miller responded as follows:

> Q:   Would you say that you consented to all these things that he was doing to you?
>
> A:   Yes.

Id. at 73. In later affidavit testimony, Miller qualified this statement, by stating:

I only allowed Link to do things to me because of his position and my fear of his position. I also saw that nothing ever happened to him even when he broke the rules. I was afraid of Link getting back at me if I didn't go along. I did not feel safe. I let him do these things but didn't want to. I was afraid. I have been in two prior physically and mentally abusive relationships . . . . I found it safest not to resist. This is what I did with Lt. Link.

Doc. #48, Ex. N (Miller Aff.) ¶¶ 4-7.

As to non-sexual conduct involving Link and Miller, during the time period in question, Link allowed Miller into the jail's central control room, which was a breach of security. Doc. #38 (Miller Dep.) at 44-45. Another officer was aware of Link's actions. <u>Id.</u> In another breach of security, Link took Miller outside the jail without handcuffs. <u>Id.</u> at 51-52. Link also tried to get Miller released before her release date, but another officer stopped him. <u>Id.</u> at 52-54.

In connection with the sexual contact with Miller, Link was charged and indicted for sexual battery (Ohio Revised Code § 2907.03). Link ultimately pled to sexual imposition (Ohio Revised Code § 2907.06) and dereliction of duty (Ohio Revised Code § 2921.44). Doc. #40, Ex. Judg. Entry.

Unrelated to the actions that gave rise to this case, Link previously received discipline for the following conduct, all of which occurred in the five year period preceding the incidents in question in this litigation: improper email and internet usage (content, amount of usage, and people with whom he communicated) (July 2004); abuse of position, by threatening and coercing another person (September 2004); failure to properly conduct a file audit, which caused an inmate to be

9

released prematurely (November 2001); and failure to correct a subordinate officer for degrading and humiliating a staff member (March 2001). Doc. #48, Ex. M (Counseling Mem., dtd. July 14, 2004); Doc. #48, Ex. N (Not. of Counseling, dtd. Sept. 23. 2004); Doc. #48, Ex. 0 (Not. of Counseling, dtd. Aug. 20, 2001); Doc. #48, Ex. P (Not. of Reprimand, dtd. Nov. 29, 2001).

III.    Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party,

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323; see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991). "Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986.  Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous

allegations, it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." Mich. Prot. & Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. Anderson, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller &

Kane, Federal Practice and Procedure Civil 3d § 2726 (1998).

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); see also L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . ."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

IV.    Analysis of Link's Motion for Summary Judgment

Link moves for summary judgment on both of Miller's claims. Doc. #39. As to Miller's claim for cruel and unusual punishment, Link argues that a consensual sexual relationship between a jail official and an inmate does not violate the Eighth

Amendment.[6]  Miller maintains that there is a genuine issue of material fact as to

whether she gave free and voluntary consent.  As to Miller's due process claim,

Link contends that that there is no constitutional right to be free from consensual

sexual contact with a jail employee and, even if such a right exists, Miller had no

constitutional right to notice and an opportunity to be heard before being deprived

of such right.  The Court will first address the Eighth Amendment claim and then

turn to an analysis of the due process claim.


A.    Whether Link Violated Miller's Eighth Amendment Rights

Link argues that Miller consented to the sexual contact between the two of

them, as evidenced by her deposition testimony, and that courts, including the

Sixth Circuit, have concluded that a consensual sexual relationship between a jailer

and an inmate does not violate the Eighth Amendment. Doc. #39 at 6-8.  Link also

contends that Miller's later affidavit testimony, on the issue of consent, is an

impermissible means of qualifying her earlier deposition testimony. Doc. #53 at 4-

5.  Link concludes his argument, in the alternative, by asserting that even if he

---

[6]It should be noted that, on summary judgment, the Defendant raises only
the issue of consent and not whether the alleged conduct was sufficiently severe
to implicate the Eighth Amendment.  On this point, the Sixth Circuit states that
"sexual abuse of a prisoner by a corrections officer may in some circumstances
violate the prisoner's right to be free from cruel and unusual punishment" and that
"there can be no doubt that severe or repetitive sexual abuse of an inmate by a
prison officer can be 'objectively, sufficiently serious' enough to constitute an
Eighth Amendment violation." Jackson v. Madery, 2005 U.S. App. LEXIS 24684,
*14, 158 Fed. Appx. 656 (6th Cir. Nov. 17, 2005) (quoting Boddie v. Schnieder,
105 F.3d 857, 860-61 (2d Cir. 1997)).

violated Miller's Eighth Amendment rights, he is protected by qualified immunity. Doc. #39 at 10-12; Doc. #53 at 9-11.

Miller responds by stating that she did not give free and willing consent to Link's sexual conduct, as is evidenced by both Link's plea to sexual imposition (which established that he knew the sexual contact was "offensive" to Miller or was reckless in that regard)[7] and by Miller's testimony. As to her affidavit, Miller asserts that the same is not contradictory of her earlier deposition testimony, wherein she stated that she consented to Link's conduct, but rather clarifies why she felt compelled to consent to the contact.

In order to establish a violation of an inmate's Eighth Amendment right to be free from cruel and unusual punishment, the inmate must demonstrate that the prison official inflicted a "serious" injury and acted with a "culpable state of mind." Williams v. Mehra, 186 F.3d 685, 691 (6th Cir. 1999) (quoting Hudson v. McMillian, 503 U.S. 1, 20, 117 L. Ed. 2d 156, 112 S. Ct. 995 (1992)).

[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the

---

[7]Link pled to subparagraph (A)(1), of Ohio's sexual imposition statute, which reads as follows:

No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when . . . [t]he offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard.

Ohio Rev. Code Ann. § 2907.06(A)(1).

14

official knows of and disregards an excessive risk to inmate health or
safety; the official must both be aware of facts from which the
inference could be drawn that a substantial risk of serious harm
exists, and he must also draw the inference.

Id. at 691-92 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 128 L. Ed. 2d 811,

114 S. Ct. 1970 (1994)).

Courts, including the Sixth Circuit, have found that sexual contact between

prison employees and inmates can, in certain instances, constitute cruel and

unusual punishment, forbidden by the Eighth Amendment. E.g., Jackson v.

Madery, 2005 U.S. App. LEXIS 24684, 158 Fed. Appx. 656 (6th Cir. Nov. 17,

2005).  If the sexual contact is consensual, however, courts have generally found

no constitutional violation. E.g., Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir.

1997).  Because the Sixth Circuit has only had one occasion to visit this issue, see

Hall v. Beavin, 1999 U.S. App. LEXIS 29700, *4 (6th Cir. Nov. 8, 1999) (stating

that "the evidence establishes that Hall voluntarily engaged in a sexual relationship

with Beavin" and, thus, "Hall's Eighth Amendment claim is without merit")

(emphasis added), the Court will look to other courts for a fuller understanding of

this right.

In addressing the question of whether sexual interactions between an inmate

and corrections officer amounted to a violation of the inmate's constitutional

rights, the Eighth Circuit, in Freitas v. Ault, opined as follows:

We believe that because the sexual harassment or abuse of an inmate
by a corrections officer can never serve a legitimate penological
purpose and may well result in severe physical and psychological

harm, such abuse can, in certain circumstances, constitute the "unnecessary and wanton infliction of pain" forbidden by the Eighth Amendment.

Freitas, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoting Whitley v. Albers, 475 U.S. 312, 319, 89 L. Ed. 2d 251, 106 S. Ct. 1078 (1986)).  With regard to how the inmate's "consent" played into this equation, the Eighth Circuit concluded that because the sexual contact, in that case, was "consensual" and "welcomed" by the inmate, it was not sufficiently serious to constitute a substantial risk of serious harm. Id. at 1338-39 ("[W]elcome and voluntary sexual interactions, no matter how inappropriate, cannot as matter of law constitute 'pain' as contemplated by the Eighth Amendment.").  Other courts have adopted the Freitas approach, in concluding that welcome and voluntary sexual interactions cannot support constitutional claims for cruel and unusual punishment. E.g., Edge v. Ferrell, 2008 U.S. Dist. LEXIS 28106, *21 (S.D. Ala. Apr. 7, 2008) (finding that plaintiff's participation in the sexual conduct was "uncoerced and thus voluntary" and he, therefore, had no viable Eighth Amendment claim); Powell v. Carlson, 2008 U.S. Dist. LEXIS 11426, *4 ( E.D. Mich. Feb. 15, 2008) (concluding that "welcome and voluntary" sexual conduct does not equate to cruel and unusual punishment, as contemplated by Eighth Amendment).

In this vein, courts have considered whether a corrections officer has used his position of authority to intimidate or coerce an inmate into participating in sexual conduct, in order to determine if the inmate's participation was welcome and voluntary. Scott v. Mo. Dep't of Prob. & Parole, 2009 U.S. Dist. LEXIS 53706,

16

**7-9 (E.D. Mo. June 25, 2009) (finding that, although the evidence indicated that the probationer at times voluntarily participated in sexual relationship, there were issues of material fact as to whether relationship began and continued, as a result of coercion; "If the sexual contact was not voluntary but rather entered into, as plaintiff alleges, out of fear of returning to prison, arguably there can be an Eighth Amendment violation."); Stubbs v. DeRose, 2007 U.S. Dist. LEXIS 17830, **23-24 (M.D. Pa. Mar. 12, 2007) (finding no evidence that plaintiff engaged in sexual acts with defendant "against her will" or "that a coercive *quid pro quo* scheme was in place"); White v. Ottinger, 442 F. Supp. 2d 236, 247-48 (E.D. Pa. 2006) (in concluding that sexual relationship was not consensual, considering that prison official "wielded power over White due to her status as a correctional officer and his status as an inmate, and used that power to maintain their sexual relationship").

Likewise, this Court concludes that in order for an inmate's consent to sexual conduct to be effective, it must be both welcome and voluntary. This approach comports with the aforementioned case law and Black's Law Dictionary, which defines "consent" to mean "[a] concurrence of wills[;] [v]oluntarily yielding the will to the proposition of another; acquiescence or compliance therewith." Black's Law Dictionary 276 (5th ed. 1968).

In the present case, Miller has presented evidence to establish a genuine issue of material fact as to whether she freely "consented" to the sexual contact with Link or whether her consent was given because she was intimidated by Link's

17

position of authority over her. In interpreting Miller's deposition and affidavit testimony in the light most favorable to her,[8] as this Court must do at this stage of the proceedings, the only conduct in which Miller clearly voluntarily participated was the writing of the initial letter to Link wherein she stated that she thought he was attractive. Her uncontroverted testimony leaves open a genuine issue of material fact as to whether her participation in the subsequent sexually related encounters (the kiss, the breast touching, Link taking a picture of her breasts and the incident where Link put his hand inside her underwear) was welcome and voluntary or, instead, was tolerated out of fear, intimidation or coercion.[9] Furthermore, Miller presents evidence that Link repeatedly breached jail security measures, exhibiting what could be perceived as his power and authority, in the jail environment. Thus, the Court will overrule Link's Motion for Summary Judgment, as to the Eighth Amendment claim, unless Link is protected by qualified immunity.

---

[8]The Court interprets the Plaintiff's affidavit (wherein she states that she only allowed Link to do things to her because of her fear of his position) as explaining, rather than contradicting, her earlier deposition testimony (wherein she stated that she consented to the things he did to her). Doc. #38 (Miller Dep.) at 73; Doc. #48, Ex. N (Miller Aff.) ¶¶ 4-7.

[9]The Plaintiff also argues that the Defendant's plea to sexual imposition helps to establish a genuine issue of material fact, on the consent issue. In response, the Defendant argues that Ohio courts require mutuality of parties where offensive collateral estoppel is sought to be used against a defendant in a civil case, based upon a prior criminal conviction. Doc. #53 at 4 (citing Culberson v. Doan, 72 F. Supp. 2d 865, 873 (S.D. Ohio 1999)). Because the Court finds that the Plaintiff's uncontroverted testimony is sufficient to create a genuine issue of material fact, on this point, it need not resolve the issue of Link's criminal plea, at this time.

B.    Qualified Immunity, as to Eighth Amendment Claim

Link contends that he is entitled to summary judgment, even if the Court

determines that Miller has created a genuine issue of material fact on the issue of

consent, because he has qualified immunity from this claim.  The Supreme Court

explains that the doctrine of qualified immunity "protects government officials

'from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would

have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565

(2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.

Ed. 2d 396 (1982)).

> Qualified immunity balances two important interests—the need to hold
> public officials accountable when they exercise power irresponsibly
> and the need to shield officials from harassment, distraction, and
> liability when they perform their duties reasonably.  The protection of
> qualified immunity applies regardless of whether the government
> official's error is "a mistake of law, a mistake of fact, or a mistake
> based on mixed questions of law and fact."

Id. (quoting Groh v. Ramirez, 540 U.S. 551, 567, 124 S. Ct. 1284, 157 L. Ed. 2d

1068 (2004) (Kennedy, J., dissenting)).  To overcome Link's claim of qualified

immunity, the Plaintiff must show that (1) Link violated her constitutional rights,

and (2) the constitutional rights at issue were clearly established.  If the Plaintiff

fails on either prong, Link is entitled to qualified immunity. Weinberger v. Grimes,

2009 U.S. App. LEXIS 2693, *9 (6th Cir. 2009) (citing Pearson, 129 S. Ct. 808);

see also Pearson, 129 S. Ct. at 818 (concluding that qualified immunity sequence

previously required by <u>Saucier v. Katz</u>, 533 U.S. 194 (2001)[10] is no longer

mandatory; rather, "judges of the district courts and the courts of appeals should

be permitted to exercise their sound discretion in deciding which of the two prongs

of the qualified immunity analysis should be addressed first in light of the

circumstances in the particular case at hand").

As was previously decided, Miller has set forth sufficient evidence to create

a genuine issue of material fact as to whether Link violated her rights to be free

from cruel and unusual punishment, in the form of unwelcome and involuntary

sexual contact, under the Eighth Amendment. Therefore, the Court must now

decide whether Miller's rights were clearly established.

The Supreme Court instructs that the qualified immunity analysis "must be

undertaken in light of the specific context of the case, not as a broad general

proposition." <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 150 L. Ed. 2d 272, 121 S. Ct.

2151 (2001). Further, "the right the official is alleged to have violated must have

---

[10]As explained by the <u>Pearson</u> Court, the sequence previously mandated by
<u>Saucier</u>, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272, for resolving
government officials' qualified immunity claims, was as follows:

> First, a court must decide whether the facts that a plaintiff has alleged
> or shown make out a violation of a constitutional right. Second, if the
> plaintiff has satisfied this first step, the court must decide whether the
> right at issue was "clearly established" at the time of defendant's
> alleged misconduct. Qualified immunity is applicable unless the
> official's conduct violated a clearly established constitutional right.

<u>Pearson</u>, 129 S. Ct. at 815-16 (2009) (citations omitted). As noted above, in
<u>Pearson</u>, the Court modified this approach by allowing judges to exercise their
discretion in determining which of the two prongs to analyze first. <u>Id.</u> at 818.

been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987).

Previous Sixth Circuit case law indicates that Miller had a right to be from sexual contact with a jail official, in which she did not <u>voluntarily</u> engage. <u>Hall v. Beavin</u>, 1999 U.S. App. LEXIS 29700, *4 (6th Cir. Nov. 8, 1999). Although the Appellate Court has not had occasion to expound on the contours of this right, this Court concludes that a "reasonable official" would have understood that using his position of authority over an inmate to intimidate her into submitting to his sexual demands, as the Plaintiff contends, is violative of the inmate's right to be free from sexual conduct in which she did not voluntarily engage. Thus, Miller's rights were clearly established.

The Court, therefore, finds that there is a genuine issue of material fact as to whether Miller freely "consented" to the sexual contact with Link or whether he violated her rights under the Eighth Amendment by intimidating her into submission, because of his position of authority over her. In addition, Miller's right to be free from sexual contact, in which she did not voluntarily engage, was clearly established. Accordingly, Link's Motion for Summary Judgment (Doc. #39) is OVERRULED, as to Miller's Eighth Amendment claim.

21

C.    Whether Link Violated Miller's Procedural Due Process Rights

The doctrine of procedural due process rests on the premise that the government cannot deprive a person of an interest in life, liberty or property without due process of law. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 105 S. Ct. 1487, 84 L. Ed 2d 494 (1985). Notice and an opportunity to be heard typically comprise due process of law. See Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950).

In asserting a procedural due process claim, in the present case, the Plaintiff misapprehends the nature of the right contained therein, which does not attach to a random deprivation by a governmental employee, such as the one in the present case. Zinermon v. Burch, 494 U.S. 113, 129, 110 S. Ct. 975, 180 L. Ed. 2d 100 (1990). As the Supreme Court explains, "no matter how significant the private interest at stake and the risk of its erroneous deprivation . . . the State cannot be required constitutionally to do the impossible by providing predeprivation process" when the deprivation is caused by a "random and unauthorized act by a state employee." Id. Thus, Link's Motion for Summary Judgment (Doc. #39) is SUSTAINED, as to Miller's procedural due process claim.

V.    Analysis of Greene County's Motion for Summary Judgment

Greene County moves for summary judgment, on both of Miller's claims. Doc. #40. As to her claim for cruel and unusual punishment, the County argues that it can only be held liable if there was a constitutional violation, behind which its municipal policy or custom was the moving force and, in the present case, there was no constitutional violation, because Miller consented to the sexual contact. This argument is without merit, however, given the Court's previous finding that there is a genuine issue of material fact on the issue of consent. Alternatively, the County asserts that it had no policy, custom or procedure that was a moving force behind Miller's alleged Eighth Amendment violation, while Miller argues that the facts indicate that the County had a custom that encouraged and ratified Link's unconstitutional conduct. As to the due process claim, Greene County argues that Miller cannot assert a substantive due process claim, given that the specific provisions of the Eighth Amendment govern, rather than the more general substantive due process provisions. Miller responds by asserting that she is bringing a procedural due process claim, rather than a substantive due process claim. The Court will first address the Eighth Amendment arguments, followed by an analysis of Miller's due process claim.

A.    Whether Greene County Violated Miller's Eighth Amendment Rights

"Section 1983 creates a federal cause of action against state or local

23

officials who deprive a person of a federal right while acting under the color of state law." <u>Thomas v. City of Chattanooga</u>, 398 F.3d 426, 429 (6th Cir. 2005). In order to prevail on a § 1983 claim, a plaintiff must "show that the alleged federal right violation occurred because of a municipal policy or custom." <u>Id.</u> The seminal Supreme Court case pertaining to policies and practices municipal liability is <u>Monell v. Dept. of Social Services</u>, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). The Sixth Circuit explains the <u>Monell</u> rule, as follows:

> A municipality cannot be liable for the constitutional torts of its employees; that is, it cannot be liable on a *respondeat superior* theory. Rather, liability will attach only where the plaintiff establishes that the municipality engaged in a "policy or custom" that was the "moving force" behind the deprivation of the plaintiff's rights.

<u>Powers v. Hamilton County Pub. Defender Comm'n</u>, 501 F.3d 592, 607 (6th Cir. 2007) (citing <u>Monell</u>, 436 U.S. at 691, 694). According to the Sixth Circuit, "[u]nder § 1983, a practice or custom involves a widespread course of conduct by municipal officials that has become a traditional way of carrying out policy." <u>Dorr v. City of Ecorse</u>, 2008 U.S. App. LEXIS 26747 at *13, 305 Fed Appx. 270 (6th Cir. Dec. 29, 2008) (citing <u>Monell</u>, 436 U.S. at 690-91). The Sixth Circuit has recognized that a plaintiff can prove the existence of a municipality's illegal policy or custom, by proving one of the following: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." <u>Thomas</u>, 398

F.3d at 429. In order to establish the fourth alternative, a custom of tolerance or

acquiescence of federal rights violations, such as that alleged in the present case, a

plaintiff must establish:

> (1) the existence of a clear and persistent pattern of sexual abuse by . . . employees;
>
> (2) notice or constructive notice on the part of the [defendant employer];
>
> (3) the [defendant employer's] tacit approval of the unconstitutional conduct, such that [its] deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction; and
>
> (4) that the [defendant employer's] custom was the "moving force" or direct causal link in the constitutional deprivation.

Doe v. Claiborne County, 103 F.3d 495, 507 (6th Cir. 1996) (citing City of Canton

v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)); see

also Thomas, 398 F.3d at 429 (same).

In the present case, the Plaintiff has asserted that Greene County had a

custom of tolerance or acquiescence of federal rights violations. In support

thereof, she points to the following evidence:[11]

- Other employees had knowledge that Link was the first to use female inmates to perform certain housekeeping tasks, as well as that Link singled out certain females for these tasks.

- Link allegedly breached security with Miller, to include taking her off jail premises and into the control room, as well as attempting to get her an early

---

[11]The Plaintiff also alleges that Link made a sexually suggestive comment to her ("look at that ass"), but points to nothing to demonstrate that any Greene County employee heard the comment. Doc. #38 (Miller Dep.) at 22.

release.

- Link's previous history of discipline for inappropriate use of his computer, abuse of his position to threaten or coerce another person, failure to properly conduct a file audit (which caused an inmate to be released prematurely) and failure to correct another officer for degrading and humiliating a staff member.

- The County's alleged failure to follow its internal policy, which provides that the County "will respond immediately to allegations of sexual assault of inmates," as well as having an affirmative duty of detection, which requires the County to "maintain a program of . . . detection," have "zero tolerance for sexual misconduct" and prohibit sexual misconduct "regardless of consensual status." Doc. #49, Ex. V (Sexual Assault Policy).

This evidence does not create a genuine issue of material fact, as to the issue of municipal liability. Based on the previous discussion regarding the genuine issue of fact that exists as to whether Miller freely consented to Link's repeated sexual contact, there is arguably a genuine issue of material fact on the first prong of the municipal liability test (the existence of a clear and persistent pattern of sexual abuse of Miller (or anyone else) by Link). However, the evidence pointed to by the Plaintiff does not establish the second prong (that the County had notice or constructive notice of Link's sexual abuse) and, thus, the Plaintiff has not satisfied either the third or the fourth prongs, which necessarily flow from the second. The fact that Link gave preferential treatment to Miller, by selecting her for cleaning duty, breaching security for her benefit and attempting to secure her early release do not in any way put the County on notice of his alleged sexual misconduct. Similarly, the previous instances of wrongdoing for which Link was disciplined were not sexually related and, thus, do not put the County on notice of Link's

26

alleged wrongdoings, in this case. As to the County's policy, the evidence indicates that it <u>did</u> respond immediately to allegations of sexual assault, when it put Link on administrative leave the day following Miller's first and only report of the alleged misconduct. Furthermore, Miller has pointed to nothing to indicate that the County was remiss in not having a program of detection or that it did not abide by its policy of having zero tolerance for sexual misconduct and prohibited sexual misconduct. Once again, the County's conduct in swiftly placing Link on administrative leave when Miller brought the allegations to its attention contradicts her claims, on this point.

In sum, Miller has failed to point to sufficient evidence to create a genuine issue of material fact, as to whether Greene County had a custom of tolerance or acquiescence of federal rights violations. Therefore, Greene County's Motion for Summary Judgment (Doc. #40), on her Eighth Amendment claim, is SUSTAINED.

B. <u>Whether Greene County Violated Miller's Procedural Due Process Rights</u>

As was previously noted, Greene County argues that Miller cannot assert a substantive due process claim, given that the specific provisions of the Eighth Amendment govern, rather than the more general substantive due process provisions. Miller has clarified that she is not asserting a substantive due process claim, but is, instead, asserting a procedural due process claim. For the reasons set forth above (regarding procedural due process rights not attaching to random

deprivations by government employees, such as Link's), Greene County's Motion for Summary Judgment (Doc. #40), on Miller's procedural due process claim, is SUSTAINED.

VI.    Conclusion

Greene County's Motion to Strike (Doc. #58) is SUSTAINED.  Therefore, Plaintiff's Exhibits J, K, L, R, S and T are stricken from the docket, and not considered in ruling on the Motions at issue herein.

Link's Motion for Summary Judgment (Doc. #39) is OVERRULED, as to Miller's Eighth Amendment claim, but is SUSTAINED, as to the procedural due process claim.

Greene County's Motion for Summary Judgment (Doc. #40) is SUSTAINED, as to Miller's Eighth Amendment claim and procedural due process claim.

Thus, at this stage of the litigation, the only claim remaining is Miller's Eighth Amendment claim against Link.

Counsel of record will note that a telephone conference call will be convened between Court and counsel, on September 14, 2009, at 8:40 a.m., for the purpose

of resetting a trial date and other dates leading to the resolution of this litigation.

September 8, 2009

   /s/ Walter Herbert Rice
WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT

Copies to:
Counsel of record